UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Israel Newman,

                                Plaintiff,         **RULING**
                                                               Case No. 09-cv-4313 (TLM)
        -against-

Benjamin Herbst

                                Defendant
---------------------------------------------------------------X

## RULING AND REASONS FOR JUDGMENT

      This matter was tried before the Court on December 22 and 23, 2010 and January 3 and 4, 2011. At the conclusion of testimony on January 4, 2011 the Court advised the parties that it would issue its oral reasons for its judgment, but reserved the right to also issue a written ruling. Upon reflection, the Court can think of no useful purpose in having the parties return, thus this ruling and reasons for judgment will serve as the basis for the judgment that will issue herein.

      The Court notes, as the transcript will amply demonstrate, that this litigation was contentious and there was great acrimony between the plaintiff and Zigmund Brach, the only non-party witness to testify, and the defendant Benjamin Herbst. The record will also reflect the trial judge's frustration on numerous occasions at not being better able to maintain the decorum that one would expect in a trial being conducted in a United States District Court courtroom.

**I. Credibility Determinations**

      In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements. The United States Supreme Court has stated that

1

"[t]rial judges have the unique opportunity to consider the evidence in the living courtroom context . . . while appellate judges see only the cold paper record." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 438 (1996) (citations and quotations omitted). The United States Court of Appeals for the Second Circuit has observed that "[t]he full flavor of [a] hearing cannot be sensed from the sterile sheets of a transcript." *ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004) (citations and quotations omitted). That is certainly the trial judge's view in this case. The record will reflect that the Court questioned each witness that testified extensively. The Court's findings of fact that follow are in part based on the trial judge's view of the credibility of the witnesses, based on their trial testimony, as well as the documentary evidence and the explanation of, or reconciliation of, any previous inconsistent statements, written or oral, made by a witness.

The Court would also note that due to the size of the courtroom in which the trial was conducted, the trial judge was seated between three and four feet from each witness that testified and had ample opportunity not only to hear each witness clearly, but also to observe each witness at very close range.

The first witness to testify was Zigmund Brach, plaintiff Israel Newman's employer. As set out in paragraphs 18, 20 and 21 of the Court's Findings of Fact, the Court found Brach's testimony riddled with inconsistencies and less than credible. The second witness to testify was plaintiff Israel Newman. As set out in paragraphs 18 and 21 of the Court's Findings of Fact, the Court found Newman to have a very selective memory and his testimony to be less than credible. The third and last witness was pro se defendant Benjamin Herbst.[1] The Court found Herbst's testimony somewhat

---

[1] To say that Mr. Herbst was a difficult witness/litigant would vastly understate the Court's frustration with Mr. Herbst's conduct during the trial and the Court's efforts to maintain control of the proceeding, which will be apparent from the transcript of the trial.

inconsistent and not entirely credible, but more credible, based on the documentary evidence, than that of plaintiff and of Brach.[2]

In any trial, civil or criminal, there are two types of evidence the trier of fact may consider: direct evidence, such as testimony of an eye witness, and indirect or circumstantial evidence, the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence.

The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). In some instances a finding of fact may also be a mixed conclusion of law and in other instances a conclusion of law may include findings of fact.

**II. Findings of Fact**

1. The multi-plaintiff complaint in this action was filed January 21, 2000 in the United States District Court for the Eastern District of New York [Rec. Doc. 1].

2. This case was originally assigned to United States District Judge Raymond Dearie, re-assigned to United States District Judge Sandra Townes, then re-assigned to United States District Judge Roslyn Mauskopf [*see* Rec. Docs. of August 20, 2004 and January 2, 2008]. The case was re-assigned to the undersigned, Visiting Senior United States District Judge on August 19, 2009 [Rec. Doc. 267].

3. Plaintiff Israel Newman's claims against defendant Benjamin Herbst were severed by the Court on October 6, 2009 [Rec. Doc. 274], and the current case number was assigned to the severed case.

---

[2] In this, as is any civil action, the party bringing the action, i.e., Newman, must, depending on the nature of the claim, establish the elements of each claim asserted by a preponderance of the evidence or by clear and convincing evidence.

4. Newman is an individual who has resided at 3814 15th Avenue, Unit 15, Brooklyn, New York, since January 9, 1986 [Trial Tr. 199; Pl. Ex. 1].

5. Defendant Herbst, who is not an attorney, is a member of a non-profit organization called the Community Council for Housing Preservation, Inc. that assists homeowners facing mortgage foreclosure [Trial Tr. 355-61]. The services Herbst renders as a member of this organization include conducting consultations with the clients, referring the clients to attorneys who specialize in the relevant legal fields, and engaging in negotiations with mortgagees on behalf of the clients [Trial Tr. 355-361]. Herbst used the corporations Uni-Group, Inc. and Cosmopolitan Capital Corporation to hold money in escrow to settle his clients' mortgages, though he was neither a director or officer of these corporations [Trial Tr. 395-96, 403, 795-96].

6. Newman has been in the employ of Zigmund Brach since 1980 [Trial Tr. 21]. At some point in the 1990s, Newman left Brach's employ for approximately two years [Trial Tr. 21].

7. On January 9, 1986 Newman entered into a mortgage with Intercounty Mortgage Corporation to finance the purchase of the property at 3814 15th Avenue [*see* Pl. Ex. 8]. The mortgage subsequently became an asset of Norstar Mortgage Corporation as successor-in-interest to Intercounty Mortgage Corporation [Pl. Ex. 8]. Newman paid off the balance of this mortgage ("Norstar mortgage") on December 30, 1988 [Trial Tr. 211].

8. On August 31, 1995, Brach, through one of his corporations, PY Trading, Inc., advanced a check of $70,000.00 to Uni-Group, Inc. [Def. Ex. A1]. Brach advanced the sum on behalf of Rabbi Elye Katz, one of Herbst's clients, so that Herbst could assist Katz in settling a mortgage on a "schule" (synagogue) [Trial Tr. 26-28; 367].

9. On April 30, 1993, Newman executed a mortgage ("Churba mortgage") on the 3814 15th Avenue property to secure a debt of $100,000.00 that he owed to Aaron Churba [Pl. Ex. 2]. On October 18, 1994, Aaron Churba commenced an action in the Supreme Court of New York, Kings County, to foreclose the Churba mortgage [Pl. Ex. 3]. The Supreme Court subsequently made an order referring the action to a referee to report on the amount due under the mortgage to Churba. [Pl. Ex. 5]. On January 5, 1996 the Supreme Court made an order confirming the report of the referee and finding that $109,750.00 was due to Churba, and directing a foreclosure auction [Pl. Ex. 6].

10. In June of 1996, Newman, upon a referral from Brach, sought Herbst's assistance in settling the Churba mortgage foreclosure matter [Trial Tr. 482]. Herbst testified that he had permission to use a law office in Manhattan for matters relating to his consulting services, such as client interviews, and Newman met Herbst at that office [Trial Tr. 363, 367-68].

11. Herbst testified that he did not hold himself out as an attorney during this meeting or at any time during his relationship with Newman or Brach [Trial Tr. 574].

12. During the meeting between Newman and Herbst, Newman wrote a check for $1,100.00 to Joel Drucker, an attorney that worked with Herbst in assisting in mortgage settlements [Trial Tr. 482-83].

13. Herbst and Drucker took the necessary steps to stop the auction sale of Newman's house that was scheduled to take place on June 21, 1996 [Trial Tr. 277, 376, 483].

14. Herbst advised Newman that it would be advantageous to keep the paid off Norstar mortgage on Newman's property of record giving it, as far as the public record was concerned, a higher position and priority over the Churba mortgage [Trial Tr. 494-95, 576-79]. Herbst directed

Newman to request that the Norstar mortgage be assigned to National Funding Corporation, and then Herbst himself requested that National Funding Corporation assign the mortgage to PY Funding Corporation, one of Brach's corporations [Trial Tr. 494-96, 796-800; Pl. Ex. 8, Pl. Ex. 11].

15. Herbst testified that he informed Brach that he would require $70,000.00 in funds to cover an offer to settle the Churba mortgage on behalf of Newman [Trial Tr. 378, 385]. Herbst testified that Brach authorized Herbst to use the $70,000.00 previously advanced to Uni-Group, Inc. on behalf of Rabbi Katz to cover an offer to settle the Churba mortgage [Trial Tr. 391]. The $70,000.00 that Brach advanced on behalf of Newman was memorialized by a ledger transfer, and a separate instrument of payment from Brach was never executed. Specifically, on August 5, 1996, Herbst re-designated the $70,000.00 on the ledger sheet associated with the Katz matter to be used for Newman's matter, [*see* Def. Ex. A], and began a new ledger sheet for Newman's account [*see* Def. Ex. B].

16. On October 31, 1996, Brach, through another one of his corporations 138 Loop, Inc., advanced Cosmopolitan Capital Corporation $1,500,000.00 in escrow for Herbst to use for matters unrelated to this proceeding [Def. Ex. C; Trial Tr. 55-56].

17. Herbst engaged in settlement negotiations with Churba on behalf of Newman and offered Churba $70,000.00 to settle the mortgage [Trial Tr. 410-12]. Herbst's settlement negotiations with Churba proved fruitless and Herbst testified that Brach demanded the return of the $70,000.00 on December 23, 1996 [Trial Tr. 410-14, 480]. Thus, on January 6, 1997, Cosmopolitan Capital Corporation remitted a check for $70,000.00 to Brach's corporation PY Trading, Inc. [Def. Ex. B1].

18. Brach testified that he thought Herbst had resolved the Churba mortgage by the time he received the $70,000.00 check from Cosmopolitan Capital Corporation written on January 6, 1997, and that it was the mutual understanding of Herbst and Brach that the $70,000.00 was to be credited against the $1,500,000.00 debt [Trial Tr. 59-60, 91-94, 190-91]. However, on June 26, 1997, Brach's corporation, PY Funding, Inc., remitted a check for $82,000.00 to the law firm that was representing Churba in the foreclosure action [Pl. Ex. 9-10]. Through this payment to Churba, Brach settled the Churba mortgage on behalf of Newman [Trial Tr. 62]. Thus, if Brach actually believed that Herbst had successfully settled the Churba mortgage, he would have learned *no later than June 26, 1997* that Herbst's representations to that effect, if actually made**,** were false. However, Brach testified that he discovered Herbst's alleged fraud "probably maybe end of '97 or early '98" [Trial Tr. 178-79]. Curiously, neither Newman nor Brach could remember whether any demand was made on Herbst to return the allegedly converted $70,000.00 before Brach advanced an additional $82,000.00 on Newman's behalf to settle the Churba mortgage on June 26, 1997 [Trial Tr. 174, 283-84]. The Court finds that the testimony of plaintiff and of Brach regarding how Brach applied the January 6, 1997 check received from Cosmopolitan Capital Corporation to be not credible.

19. On March 1, 2007, Brach and Herbst entered into binding arbitration before a Rabbinical Court to resolve a dispute that arose with regard to the $1,500,000.00 escrow allowance from 138 Loop, Inc. to Cosmopolitan Capital Corporation [*see* Rec. Doc. 238]. The Rabbinical Court ultimately rendered a judgment in favor of Brach in the amount of $475,000.00, and that judgment was made executory in this Court [*see* Rec. Doc. 238]. Herbst testified that the Rabbinical Court's judgment did not account for the January 6, 1997 check of $70,000.00

7

remitted by Cosmopolitan Capital Corporation to PY Trading, Inc. [Trial Tr. 503]. Therefore, Herbst has not previously received a $70,000.00 credit towards the $1,500,000.00 debt owed to Brach on which the Rabbinical Court entered judgment in Brach's favor in the sum of $475,000.00.

20. At one point, Brach testified that Herbst was given credit in the Rabbinical Court arbitration for the January 6, 1997 check of $70,000.00 from Cosmopolitan Capital Corporation to PY Trading, Inc., which would mean Herbst could not claim in this proceeding that the $70,000.00 was repayment for the Newman matter [Trial Tr. 97, 189-92]. Later, Brach contradicted himself and testified "I don't know if [Herbst] submitted to arbitration more checks. I don't remember what [Herbst] submitted." [Trial Tr. 100]. The Court finds Brach's testimony irreconcilable, thus not credible.

21. Brach testified that plaintiff Newman, his employee, had "paid everything back," referring to the money that Brach advanced on behalf of Newman to settle Newman's mortgage and related tax issues [Trial Tr. 137]. However, Newman, who was present during his employer Brach's testimony, testified that he still owes Brach money [Trial Tr. 199]. This testimony is irreconcilable and further undermines the credibility of Newman and of Brach.

### III. Conclusions of Law

Plaintiff's counsel represented in the January 15, 2009 Joint Pretrial Order [Rec. Doc. 253] and in his December 30, 2009 letter to the Court [Rec. Doc. 285] that the claims against defendant that remained to be tried were a civil cause of action under 18 U.S.C. § 1962(c), fraud, unjust enrichment, conversion, breach of fiduciary duty, and an action for an accounting. The plaintiff's asserted claims will each be addressed in turn.

1. RICO

The plaintiff alleges that the defendant conducted the affairs of Cosmopolitan Capital Corporation through a pattern of several acts of mail fraud in violation of 18 U.S.C. § 1962(c).

18 U.S.C. § 1962(c), a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Thus, to establish a violation of 18 U.S.C. § 1962(c), a plaintiff must show, by a preponderance of the evidence, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001) (quotations omitted); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 491 (1985) (preponderance of the evidence standard is the proper standard in a civil RICO case). The United States Supreme Court has held that "conducting" an enterprise's affairs means "participat[ing] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The term "enterprise" is defined as "any individual, partnership, corporation, association or other legal entity . . ." § 1961(4). "Racketeering activity" is broadly defined to encompass a variety of state and federal offenses including, *inter alia*, mail fraud. *See* 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires at least two acts of racketeering activity, *see* 18 U.S.C. § 1961(5), but two acts will not always be sufficient to establish a "pattern," *DeFalco*, 244 F.3d at 306.

The elements of mail fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails to further the scheme. *United States v. Shellef*, 507 F.3d 82,

108 (2d Cir. 2007).

As defendant used Cosmopolitan Capital Corporation to hold in escrow the money Brach advanced on behalf of plaintiff and to transfer the money back to Brach, *see* Def. Ex. B & B1, defendant "conducted" the affairs of an "enterprise." Plaintiff has established the first and second elements of a claim under § 1962(c). However, Plaintiff has failed to establish that defendant engaged in any "scheme to defraud" in the course of his dealings with plaintiff, and thus has not established that the defendant committed a single act of mail fraud, let alone a pattern of mail fraud. The plaintiff has failed to prove the third and fourth elements of a claim under § 1962(c) by a preponderance of the evidence.

2. Fraud

Under New York law, a plaintiff alleging fraud must show five elements by clear and convincing evidence: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 488 (2007); *Tanzman v. La Pietra*, 778 N.Y.S.2d 199, 200 (N.Y. App. Div. 2004).

As the defendant engaged in negotiations to settle the plaintiff's mortgage and returned the money he held in escrow on plaintiff's behalf once negotiations proved fruitless, s*ee* ¶¶ 17-18 of Findings of Fact, the plaintiff has failed to prove the second, third, fourth or fifth elements of a fraud claim.

3. Unjust Enrichment

To prevail on a claim of unjust enrichment under New York law, a party must show, by a preponderance of the evidence, that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. *Old Republic Nat. Title Ins. Co. v. Luft*, 52 A.D.3d 491, 491-92 (N.Y. App. Div. 2008).

As the defendant returned the $70,000.00 that was advanced to him on behalf of the plaintiff and did not otherwise receive credit for that sum in the Rabbinical Court arbitration, *see* ¶¶ 17-20 of Findings of Fact, the plaintiff has failed to establish that the defendant was enriched through his dealings with plaintiff.

4. Conversion

"A cause of action for conversion requires a showing that the defendant exercised unauthorized dominion over the plaintiff's property to the exclusion of the plaintiff's rights." *White v. City of Mount Vernon*, 221 A.D.2d 345, 346 (N.Y. App. Div. 1995) (citations omitted).

As the Court has found that defendant returned the $70,000.00 that was advanced to him on behalf of the plaintiff, s*ee* ¶¶ 17-18 of Findings of Fact, the plaintiff has failed to establish that the defendant exercised unauthorized dominion over the plaintiff's property.

5. Breach of Fiduciary Duty

"In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007). "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *People ex rel Cuomo v. Coventry First LLC*, 915 N.E.2d 616, 620 (2009) (quotations omitted).

As the defendant was entrusted with money advanced on plaintiff's behalf and retained for the purpose of advising plaintiff on settling his mortgage, s*ee* ¶¶ 10, 15 of Findings of Fact, the Court finds that the defendant owed a fiduciary duty to plaintiff. However, as the defendant did not act improperly during the course of his fiduciary relationship with plaintiff, and returned the money advanced on plaintiff's behalf, defendant did not breach his fiduciary duty.

6. Accounting

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Adam v. Cutner & Rathkopf*, 656 N.Y.S.2d 753, 759 (N.Y. App. Div. 1997).

As the Court has found, for the reasons set out hereinabove, that defendant did not breach his fiduciary duty to the plaintiff, plaintiff is not entitled to an accounting.

Plaintiff has failed to establish his claims against defendant for RICO, unjust enrichment, conversion, breach of fiduciary duty, and an accounting by a preponderance of the evidence, and his claim for fraud by clear and convincing evidence.

For the foregoing reasons the Court will enter judgment in favor of defendants Benjamin Herbst and against plaintiff Israel Newman dismissing all of plaintiffs' claims with prejudice.

**SO ORDERED.**

Tucker L. Melançon
United States District Judge

February 15, 2011
Brooklyn, NY